IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AMSOUTH BANK, an Alabama Banking
Corporation,

        Plaintiff,

        vs.                        Case No. 06-CIV-0722

MISSISSIPPI CHEMICAL CORP.;
MISSISSIPPI POTASH, INC;
CHARLES OWEN ENGINEERING, LLC;
TERRA INDUSTRIES, INC.; UNITED
STATES FISH & WILDLIFE SERVICE;
and UNITED STATES PROBATION
OFFICE,

        Defendants.

MEMORANDUM AND ORDER

As a part of a plea agreement following a prosecution under the Migratory Bird Act, 16 U.S.C. § 703, 707(a), the defendant Mississippi Potash agreed to remediate environmental pollution at the Laguna Toston site in New Mexico, and toward this end deposited $237,500 into escrow with plaintiff AmSouth Bank.  Under the Remediation Escrow Agreement, AmSouth would pay funds from the escrow account upon confirmation by Mississippi Potash that the United States Probation Office either approved or did not object to the payment. After the dissolution of Mississippi Potash, the Probation Office notified AmSouth on July 28, 2005 that further disbursements would be directly approved by that office.

According to the Complaint, AmSouth has paid out $147,150 from the escrow account to Charles Owen Engineering; $95,439.61 remains in escrow. Owen Engineering has subsequently submitted its final two payment requests (for $59,850 and $11,500) to AmSouth. The Probation Office has refused to authorize the payments. AmSouth then instituted this interpleader action under the authority of Paragraph 5 of the Escrow Agreement, which provides that in the case of disputes, "the Escrow Agent may ... commence an action in the nature of an interpleader and deposit the disputed portion of the Escrow Fund with a court of competent jurisdiction for disposition."

The matter is now before the court on the motion of the United States to dismiss the action, which argues that it is an indispensable party under Fed.R.Civ.P. 19(b) but has not waived its sovereign immunity. The motion is opposed by AmSouth and Owen Engineering.

Defendant Charles Owen argues that the court may exercise jurisdiction over the United States pursuant to the Administrative Procedures Act, 5 U.S.C. § 702, and that even if this were not true, the action should not be dismissed under Rule 19. Plaintiff AmSouth also states that the court has jurisdiction under § 702. The plaintiff does not address the issue of Rule 19. In its reply, the government stresses that § 702 was not explicitly advanced as a basis for jurisdiction in its Complaint. It further stresses that the respondents do not "point to any case law which has held that the United States may be joined in an interpleader action under the waiver in 5 U.S.C. § 702 in contrast to the numerous cases cited by the United States that no waiver for interpleader actions exists." (Dkt. No. 17, at 2).

5 U.S.C. § 702 provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking

relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

As noted earlier, in response to the APA argument of AmSouth and Owen Engineering, the government argues first that the cases cited by these parties — *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005); *Clark v. Library of Congress*, 750 F.2d 89, 102 (D.C. 1984) — involved constitutional claims, that such constitutional claims are not present here, and reiterates from its earlier brief the line of cases[1] holding that there has been no waiver of sovereign immunity for interpleader actions.  (Dkt. No. 17, at 2).

However, the line of cases cited by the government merely establishes that the general statute permitting interpleader, 28 U.S.C. § 1335, is not *itself* a waiver of sovereign immunity – "An interpleader proceeding does not establish jurisdiction:  'The United States may not be required to interplead when it has not waived its sovereign immunity.'" *Kentucky ex rel. United Pacific Ins. Co. v. Laurel County*, 805 F.2d 628, 636 (6th Cir. 1986), cert. denied, 484 U.S. 817 (1987) (*quoting* 7 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1721, at 654 (2d ed. 1986)

---

[1]*Kentucky ex rel. United Pacific Ins. Co. v. Laurel County*, 805 F.2d 628, 636 (6th Cir. 1986), *cert. denied,* 484 U.S. 817 (1987); *United States v. Dry Dock Sav. Inst*., 149 F.2d 917, 918 (2nd Cir. 1945); *Coastal Rehab. Servs. v. Cooper*, 255 F. Supp. 2d 556, 559 (D.S.C. 2003); *Sanitary Dairy Prods.* v. Cook, 211 F. Supp. 183, 185 (W.D. La. 1962); *United States v. Sanitary Dairy Prods.*, 211 F. Supp. 185, 187 (W.D. La. 1962); *United States v. Commercial Bank of North America*, 31 F.R.D. 133, 136 (S.D. N.Y. 1962).

(*citing United States v. Dry Dock Savings Institution*, 149 F.2d 917 (2d Cir. 1945))). In each case, the court merely held that the interpleader statute itself was not enough to waive immunity.

But these cases are simply irrelevant to the applicability of waiver under the APA. Each of the cited cases involved competing claims to a monetary *res,* against which the government also asserted a claim. Claims under § 702, of course, involve legal disputes where there is no claim for monetary damages against the United States. Necessarily, therefore, none of these cases cited by the government involved an action under § 702, or contain any mention of potential waiver under the APA.

The government's attempt to distinguish cases such as *Simmat* and *Clark* is similarly unpersuasive. The key point in each case was not that the claim advanced was constitutional in nature, but that the claim was not one for monetary damages or a claim against other public funds. Thus, in *Simmat* the court stressed that plaintiff's claim was for injunctive relief and thus the plaintiff was "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority" under § 702. 413 F.3d at 1233. Similarly in *Clark*, the court stressed that those portions of the plaintiff's claims seeking non-monetary relief were actionable because § 702 "eliminated the sovereign immunity defense in virtually all actions for non-monetary relief against a U.S. agency or officer acting in an official capacity." 750 F.2d at 102.

The government is on more substantial grounds when it next argues that waiver under the APA is inapplicable because the decision to refuse to approve the disbursements was taken by an officer of the United States Probation Office. The government points out that the court system itself has been excluded from the terms of the APA, and this exclusion extends to the judicial branch

4

generally.  *See, e.g., Novell, Inc. v. United States*, 109 F.Supp.2d 22, 25-26 (D. D.C. 2000) (APA does not authorize suits against the Administrative Office of the United States Courts); *Tashima v. Administrative Office of the U.S. Courts*, 719 F.Supp. 881, 886 (C.D. Cal. 1989), aff'd., 967 F.2d 1264 (9th Cir. 1992) (Administrative Office was not an "agency" for purposes of the APA).  One court has explicitly held that the sovereign immunity waiver in the APA did not apply to the United States Probation Service.  The court held that the exclusion for the Probation Service was "warranted not by the functions it performs ... but by its status as an auxiliary of the courts, which, unlike agencies of the executive branch, are specifically excluded" from the APA.  *Pickus v. United States Bd. of Parole*, 507 F.2d 1107, 1112 (D.C.Cir.1974).

Accordingly, the court will dismiss the United States Probation Office from this action. However, plaintiff's Complaint also specifically includes claims against not just the Probation Office but also the United States Fish & Wildlife Service.  There is no question but that the Fish & Wildlife Service is governed by the APA.  *See, e.g., Bennett v. Spear*, 520 U.S. 154 (1997) (holding plaintiffs had standing to bring APA claims against the Fish and Wildlife Service).

The plaintiff will be granted a period to amend its Complaint to explicitly state it is asserting jurisdiction under 5 U.S.C. § 702.

The government asserts in a footnote that the Fish and Wildlife Service "is also named since it is mentioned in the Escrow Agreement, the parties do not claim to have any dispute with it." (Dkt. No. 17, at 2 n. 1).  However, a review of all the pleadings does not support this assertion.  The Complaint explicitly identifies the Fish and Wildlife Service as a defendant.  There are, as one may expect in an interpleader Complaint, no detailed descriptions of the nature of each of the claims of each of the parties against the others.  The Answer of Charles Owen Engineering specifically alleges

5

that the Fish and Wildlife Service has no "right to any of the interpleaded funds or any legal basis to prevent Charles Owen from obtaining the interpleaded funds." (Dkt. No. at ¶ 6). Further, the same pleading's allegation that the Probation Office "had authority" to approve or deny payment can be read as an allegation that the Fish and Wildlife Service improperly delegated its express authority under the Escrow Agreement. (Id. at ¶ 16). In short, there is no basis in the pleadings for the court to conclude that no valid complaint could be advanced against the Fish and Wildlife Service.

The court further finds that, even if the court were to dismiss all claims against all governmental defendants, dismissal under Rule 19(b) would be unjustified.

The government notes Owen's argument that a dismissal of the action would leave the parties without a legal remedy, but states that "[a]s noted in the United States' motion, Defendant Owen has the legal right to seek relief directly against Mississippi Chemical Corporation with whom it contracted. ... While exercise of that right may result in no recovery to Charles Owen Engineering, LLC, if the corporation no longer has assets, that is not the fault of the United States." (Dkt. No. 17, at 6)

The government argues that its own interests cannot be protected if the action is not dismissed: "Since the criminal defendant is now without assets to complete the work, the United States would be deprived of the benefit of the criminal plea agreement to remediate the environmental harm caused by the criminal defendant's conduct." *Id*.

The court finds that these arguments would not support dismissal of the entire action. First, with respect to the interest of the United States, that interest is extremely limited. That is, "the benefit of the criminal plea agreement" was ensuring that a specific sum was on deposit in escrow for remediation payments. As noted in the pleadings by all parties, the government has absolutely

6

no claim to the escrowed funds themselves.  Under the Escrow Agreement, the United States was given only a limited power to express approval or disapproval of specific payments.  The government has exercised that right, and in light of the clearly existing dispute the plaintiff has exercised its right under the contract to proceed with this action.  The government was given no veto power under the Escrow Agreement over the right to interpleader.

Accordingly, the court finds only no substantial prejudice to the United States if the present action proceeds.  Further, the court finds that a judgment in the absence of the United States can adequately protect the interests of the parties.  The government itself recognizes that Owen Engineering would be forced to try to recover against a bankrupt corporation, but that this is "not the fault of the United States."  This is true but beside the point.  Fault would arise if this court were to permit a result which would be so clearly contrary to the intended result of the parties to the Escrow Agreement and one of the contractors who relied upon its existence before incurring substantial expenses.  And plaintiff AmSouth would be inescapably injured by exposure to multiple claims to the escrowed funds in clear contravention of the purposes of the Escrow Agreement and thus have no adequate remedy in the event that this action is dismissed.

IT IS ACCORDINGLY ORDERED this 14th day of December, 2006, that the Motion to Dismiss (Dkt. No. 13) of the United States is granted such that the defendant United States Probation Office is hereby dismissed from the action, and is otherwise denied.  The plaintiff may file an Amended Complaint explicitly advancing a claim under 5 U.S.C. § 702 within 21 days of this order.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE